UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

DAVID YOUNGER,

              Defendant.

16 Cr. 348 (JSR)

**DEFENDANT DAVID YOUNGER'S SENTENCING MEMORANDUM**

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Christine H. Chung
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendant David Younger*

September 12, 2016

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

DISCUSSION .................................................................................................................................2

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

### Cases

*United States v. Adelson*,
   441 F. Supp. 2d 506 (S.D.N.Y. 2006)........................................................................................2

### Rules / Statutes

18 U.S.C. § 3553(a) ..................................................................................................................1, 10

18 U.S.C. § 3583(a) .....................................................................................................................11

U.S.S.G. § 2T1.1 ...........................................................................................................................10

U.S.S.G. § 2T4.1 ...........................................................................................................................10

U.S.S.G. § 3E1.1 ...........................................................................................................................10

U.S.S.G. Part A, Sentencing Table ...............................................................................................10

Defendant David Younger, by and through undersigned counsel, respectfully submits this Sentencing Memorandum to aid the Court in its determination of sentence. Sentencing is scheduled to take place on September 19, 2016 at 4:00 p.m.

## **INTRODUCTION**

This past May, David Younger pled guilty pursuant to a plea agreement to an Information that charged him with a single count of filing false corporate and individual tax returns for the tax year 2008. Specifically, Dr. Younger, a 62-year old Board-certified neurologist whose private medical practice is based in Manhattan, New York, admitted to filing tax returns for himself and for his practice, which is organized as an "C" corporation, in which he falsely reported personal expenses, such as golf club fees and home renovation costs—as expenses of his medical practice. As part of his plea agreement, Dr. Younger also agreed to accept the sentencing consequences of filing similarly false corporate and individual returns for the prior tax year of 2007. As estimated in the Information, the total amount of falsely characterized expenses for the two tax years was approximately $600,000 and the total tax loss, before interest and penalties, $350,000.

Dr. Younger respectfully requests that the Court adopt a sentence akin to the recommendation of the U.S. Probation Office ("Probation Office"), issued on August 18, 2016, and sentence Dr. Younger to one year of probation, community service, and/or a fine. The reason for this request is that such a sentence, while being more lenient than the applicable Guidelines range of 18 to 24 months' imprisonment, is sufficient, but not greater than necessary, to serve the objectives of sentencing. *See* 18 U.S.C. § 3553(a) (setting forth factors bearing on sentence). Among other things:

- Dr. Younger, who is a 62-year old husband and father of two grown sons, has otherwise led a law-abiding life and does not pose any danger to society;

- Dr. Younger has fully acknowledged the seriousness of his criminal conduct and has accepted responsibility for that conduct by not contesting his guilt and by undertaking to make the IRS whole, including for penalties and interest due and owing on the approximately $350,000 tax loss for the 2007 and 2008 tax years;

- Dr. Younger cooperated in the IRS investigation of his conduct by hiring accountants and lawyers who provided documents and met with the IRS to answer questions;

- Dr. Younger has already suffered punishment in the form of having been under IRS and US Attorney's Office scrutiny for six years, public shaming, and the risk of impairment or loss of his hospital privileges and medical license;

- Given his acceptance of responsibility and the punishment he has already suffered, no meaningful purpose would be served by incarcerating Dr. Younger. To the contrary, Dr. Younger's patients and students would be deprived of their doctor and teacher and Dr. Younger's family of its leader and sole bread-winner. If incarcerated, Dr. Younger, given his age, would likely be impaired in restoring his livelihood;

- By prosecuting Dr. Younger and publicizing the Information and plea, the government has already generated whatever measure of incremental deterrence of tax crimes can be accomplished without imposing disproportionate harm on Dr. Younger, his family, and his patients.

Dr. Younger is deeply remorseful for his crime. He respectfully entrusts his fate to the Court and requests the opportunity to continue to head his family and his care for his patients and continue his medical research without the interruption of imprisonment.

## DISCUSSION

### A.   Dr. Younger's Personal History and Characteristics

It is an "elementary principle" to assess the "immediate misconduct . . . in the context of [the defendant's] overall life hitherto," particularly "at the moment of [the defendant's] sentencing, when his very future hangs in the balance." *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006).

Dr. Younger was born in New Hyde Park, New York, in 1954, and was raised in Great Neck, New York, together with his older brother, Jonathan, by his father, a career IRS agent, and

his mother, a homemaker and elementary school teacher. PSR ¶ 35. Dr. Younger's family was close and supportive, and but for psychotherapy that Dr. Younger underwent at the age of 16 to treat anxiety sufficiently pronounced to cause him to stutter, his childhood and teenage years were positive ones. *Id.*, ¶¶ 36, 46.

After graduating from high school in Great Neck, Dr. Younger attended the University of Michigan, from which he graduated in 1976 with a B.S. degree in Zoology, with Honors. *Id.*, ¶ 51.[1] Thereafter, he enrolled in medical school at the University of Brussels in Belgium, transferring after two years in Brussels to Columbia University, College of Physicians and Surgeons. *Id.*, ¶ 52. He received his M.D. degree in 1981 and subsequently completed a series of Neurology fellowships at Columbia-Presbyterian Medical Center in New York City, including in neuromuscular disease, epilepsy, and clinical trials research. *Id.*, ¶¶ 52. 53.

Dr. Younger married the former Holly Komisar in 1988. *Id.*, ¶ 37. She was a graduate student at New York University, studying Dance Choreography. Dr. Younger began practicing through the Columbia-Presbyterian practice group the following year, and founded his private Neurology practice in 1998. *Id.*, ¶ 56. After maintaining offices on Park Avenue in Manhattan for nearly a decade, Dr. Younger moved his offices in 2007 to East 34th Street, on the campus of NYU Langone Medical Center, where he was Chief of Neuromuscular Diseases and Director of the Jerry Lewis Muscular Dystrophy Clinic. *Id.* From 1986 to 1992, Dr. Younger obtained Board certifications in the specialties of Internal Medicine, Clinical Neurophysiology, Electrodiagnostic Medicine, Neurology, and Psychiatry. *Id.*, ¶ 53. Since the start of his private practice, Dr. Younger has served as an Assistant Professor of Neurology at Columbia University, a Clinical Associate Professor of Neurology at NYU School of Medicine, and a Chief of

---

[1] Dr. Younger's CV is attached hereto as Exhibit A.

Neuromuscular Disease at Lenox Hill Hospital.  *Id*., ¶ 59.  He remains on active staff at NYU Langone Medical Center, Lenox Hill Hospital and at White Plains Hospital, where he serves as co-Director of the Muscular Dystrophy Clinic and an Attending Physician in Neurology.  *Id*., ¶ 56.

Dr. Younger's professional specialties have included the diagnosis and treatment of complex neuromuscular and neuroimmunological diseases of the nervous system.  His specialties include Lou Gehrig disease, Lyme Disease, and childhood muscular dystrophy.  *See* Exhibit A (CV).  He has been the author, co-author, or editor of over two hundred articles, reviews, book chapters, and abstracts on topics in the field of neurology and continues to teach in the Department of Neurology at NYU School of Medicine, in the Division of Neuroepidemiology.  *See id.*

In 2012, two years after being notified of the IRS audit that led to this case, and while the IRS was conducting its investigation, Dr. Younger returned to graduate school to study in the field of public health.  PSR ¶¶ 18, 54.  He did so in part to lay the groundwork for engaging in more public-service related work.  He also was fearful that if the IRS investigation led to a criminal prosecution, the prosecution could threaten his ability to continue his private practice.  Dr. Younger was awarded a Master's degree in Public Health by New York University in 2014, and a Master's degree in Epidemiology by Columbia University this past spring.  *Id.*, ¶54.

Dr. Younger's two sons, Adam and Seth, are 24 and 19 years old, respectively.  *Id.*, ¶¶ 38, 39.  Dr. Younger and his wife Holly raised Adam and Seth in the Edgemont section of Scarsdale, New York.  *Id.*, ¶ 40.  Other than working part-time at Dr. Younger's practice, as an office aide, Holly has not worked outside the home since her children were born.  *Id.*, ¶ 37.  Adam attended college at Case Western Reserve University and is currently studying for a

4

Master's in Public Administration at the Wagner Graduate School of Public Service at New York University.  *Id.*,¶ 38.  Seth, who was diagnosed with Tourette's syndrome as a 16 year-old, transferred in his junior year of high school from a public school to Horace Mann High School, where he was granted academic accommodations on account of his diagnosis.  *Id.*,¶ 39.  He just began his college studies at Wesleyan University.  *Id.*  Both Adam and Seth remain financially dependent on Dr. Younger for their housing and tuition expenses.  *Id.*, ¶¶ 38, 39.

At the Probation Office's request, the individuals who submitted letters to the Court in support of Dr. Younger at sentencing are representatives of different categories of people with whom Dr. Younger has interacted:  his patients, his students, his peers, and his family members.[2] The letter writers convey that Dr. Younger is a skilled, hard-working, and caring doctor, an effective  mentor and role model for his students, and the figure who binds his close-knit family. The letter writers also attest that Dr. Younger has admitted responsibility for his crime of falsifying tax returns and is extremely remorseful for his conduct.

Thus, for example, Gina Cioffi, whom Dr. Younger treated for a severe facial deformity and a rare neurological disorder brought on by exposure to Lyme disease, has written that Dr. Younger's treatment resulted in a "tremendous" outcome for her, after years in which she searched in vain to find a doctor even capable of diagnosing her condition properly.  She has also written that she became a better professional in her chosen field of advocating on behalf of patients as a result of experiencing the "immense care and dedication" of Dr. Younger.

Cynthia Schmerler has described Dr. Younger's diagnosis and treatment of her then 13-year old son for Guillain Barré syndrome, following an episode in which he lost feeling below his waist and other doctors were unable to diagnose his condition.  Like Ms. Cioffi, she found

---

[2]   The letters submitted in support of Dr. Younger, and a letter written by Dr. Younger, are annexed hereto as Exhibit B.

Dr. Younger to be tireless in his efforts; she also states that she has "always found Dr. Younger to be a top-level physician and researcher." Ms. Schmerler has described that Dr. Younger has discussed his admission of guilt with her and that he "feels tremendous remorse" for his actions.

Xiaoling Chen, a native of China who came to the U.S. several years ago to obtain a Master's degree in Public Health at Drexel University, tutored Dr. Younger while Dr. Younger was studying for his advanced degree in epidemiology at Columbia's School of Public Health. After gaining his Master's degree, Dr. Younger in turn helped Ms. Chen obtain a job at NYU as a researcher, on a temporary basis. There, the pair has conducted research and published data regarding the treatment of a childhood neuropsychiatric illness, called PANDAS, that causes tics and obsessive compulsive disorders. According to Ms. Chen, the research has already benefitted many afflicted patients. Ms. Chen reports having gained "integrity and confidence," and feeling "more capable of succeeding" when she returns to China, as a result of having trained and worked with Dr. Younger.

Dr. Philip M. Tierno, who served as Director of Microbiology and Immunology at NYU Langone Medical Center and has been a colleague and research partner of Dr. Younger at NYU Langone for the past eight years, states that Dr. Younger is a "warm and dynamic individual with a genuine compassion for people." He also describes that Dr. Younger has "excellent standing as a faculty member," and is regarded with "admiration and respect" by his peers. According to Dr. Tierno, he has found Dr. Younger to be guided by "compassion, humility, and integrity" in his profession. Dr. Tierno describes that Dr. Younger has shared the fact of his guilty plea and is "very distraught" by his crime. He has asked that the Court consider leniency "for the sake of Dr. Younger's patients."

Finally, Adam Younger, Dr. Younger's elder son, has written of the role that his father played in bringing up Adam and his younger brother Seth and the consequences for his family of his father being investigated and prosecuted. According to Adam, his mother, who is the more emotional of his parents and suffers from bouts of depression, has "crumbled" in the face her husband's prosecution. She has endured being ostracized by friends of herself and her husband, following the publicizing of her husband's guilty plea in Westchester County media, and worries that her husband might lose his ability to support the family, as a result of being incarcerated.

Adam has been stunned by his father's plea, as he has always regarded his father as a role model, including in living and inculcating the values of honesty and integrity. Adam has described the episode in his life during which he relied on his father's support and presence most heavily. While a high school sophomore, in late 2007, he fractured two vertebrae in his back in a horseback riding accident. As a result of being incapacitated during his recovery, Adam was forced to withdraw from school and receive home schooling. While in rehabilitation, Adam also became addicted to pain killers and had to be admitted to hospital for treatment of his addiction and psychiatric care. According to Adam, when he was under the influence of the painkillers, and wanting to give in to his addiction, his father convinced him of the need to fight his addiction and regain the ability to move his life forward. Adam attributes the fact that he finished his sophomore year at the top of his class, after reuniting with his classmates, to the support, counseling, and encouragement provided by his father.

In sum, Dr. Younger is a one-time offender who otherwise has led a life of service and dedication, to his family and to his profession.

**B.     The Nature and Circumstances of the Offense**

Dr. Younger admitted to the charge in the Information in the following allocution to the Court:

> Your Honor, in 2009, I signed and filed a corporate tax return for the tax year 2008 that contained false information about the business expenses of my medical practice, Younger, P.C., in an amount of about $330,000. The individual tax return I signed and filed for the same year falsely understated my personal income in a corresponding amount. I knew that the returns contained false information, and I understood that it was my legal obligation to file truthful tax returns. I live in Westchester County and my medical practice is in Manhattan.

Plea Hr'g Tr. 13:9-18 (Mar. 19, 2016).

In his Pre-Sentence interview, in compliance with the practices of this Court, Dr. Younger answered all questions about the charged crime. PSR ¶ 17. He also described the additional conduct that he agreed would be considered relevant conduct at sentencing. *Id.* As reported in the Pre-Sentence Report, "Younger freely admitted his criminal conduct" by "stat[ing] that he filed federal personal and corporate income tax returns for tax years 2007 and 2008, in which he reported false information." *Id*. The false information, according to the re-telling in the Pre-Sentence Report, consisted of false characterizations of "personal expenses as business expenses (that stemmed from his medical practice)." *Id.* Dr. Younger, in addition, estimated that "his criminal conduct resulted in [tax] losses of in excess of $300,000 to the IRS." *Id.* The Probation Officer who conducted the interview noted that Dr. Younger was "candid and cooperative" during his interview. PSR ¶ 46.

The Information, while charging Dr. Younger solely with having filed false tax returns for the 2008 tax year, describes in a "Background" section the conduct leading to the filing of false returns for years 2007 and 2008. Information, ¶¶ 1-6. In both years, Dr. Younger used a corporate credit card of his practice, and checks drawn on the banks account of his practice, to

8

pay for personal expenses and then caused those expenses to be falsely recorded in the books of the practice as the cost of goods sold and business expenses. *Id.*, ¶¶ 3-4. As a result, the Forms 1120 for Younger, P.C., and the Forms 1040 filed by Dr. Younger, for the tax years 2007 and 2008, were based on an overstatement of business expenses of approximately $250,234 and $335,983, respectively. *Id.,* ¶¶ 3-5.

Many of the expenses that were falsely categorized as business expenses in the tax returns signed and filed by Dr. Younger were large sums spent for the leisure or recreation of Dr. Younger and his family or improvements to the family's home. *Id.*, ¶ 6. These included fees of approximately $100,000 for membership at a private golf and country club, tens of thousands of dollars in property taxes for Dr. Younger's Scarsdale residence, approximately $17,000 for an electric gate at that residence, costs of construction at the residence, approximately $26,000 for the restoration of a piano, approximately $18,000 for furniture delivered to Dr. Younger's residence, and approximately $20,000 in airfare for members of Dr. Younger's family. *Id.*

As Dr. Younger made clear during the Pre-Sentence interview, he claims no excuse for his criminal conduct and attributes it directly to his desire at the time to fund a "lavish lifestyle" with "financial gain" derived from his practice's funds. PSR ¶18. Dr. Younger's medical practice, for the past ten years, has had gross receipts ranging from $1.1 to $2.2 million dollars per year, with an average in the middle of that range. *E.g.,* PSR ¶ 57. It is accordingly a healthy practice but hardly high-flying by New York City standards. The personal expenses that Dr. Younger incurred in 2007 and 2008, and falsely characterized as business expenses, constituted an outsized spending spree that Dr. Younger improperly and dishonestly attempted to fund using taxpayer money.

C.    **The Guidelines Sentence**

9

Under the terms of the plea agreement, Dr. Younger and the government agreed that although Dr. Younger was charged with filing false tax returns solely for the tax year 2008, the conduct relevant to sentencing included the tax loss attributable to false corporate and individual returns for the prior tax year.  Plea Agreement at 1.  Based on their agreement that the tax loss for those years is greater than $250,000 but less than $550,000, the parties agreed further that under U.S.S.G. §§ 2T1.1(a) and 2T4.1(G), the base offense level is 18.  *Id.* at 2.  Assuming that Dr. Younger qualifies for a three-level deduction for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), the applicable Guidelines offense level is 15.  *Id.*  The parties agreed that at that level, in light of the lack of any criminal history, the Stipulated Guidelines range is 18 to 24 months' imprisonment.   *See id.* at *3*; *see also* U.S.S.G Part A, Sentencing Table.

The plea agreement also obligates Dr. Younger to pay restitution to the IRS for losses caused by the filing of false tax returns for the years 2007 and 2008.  *Id.* at 1.  Dr. Younger agreed to file amended corporate and individual tax returns for those years "at least two weeks prior to the date of sentencing."  *Id.*  He complied with that obligation, filing amended tax returns on August 29, 2016.  The plea agreement anticipates that the IRS will calculate the tax loss plus applicable penalties and interest based on the amended returns.  *Id.*

The parties stipulated in the plea agreement that the applicable fine range is $7,500 to $75,000.  *Id.* at 3.

**D.    A Sentence of Probation, Community Service, and Fine Is Sufficient To Serve the Objectives of Punishment**

Alone among the Section 3553(a) factors, the Guidelines range suggests imposition of a sentence of incarceration.  Dr. Younger respectfully submits that the sentence proposed by the Probation Office, in principle, is instead the sentence "not greater than necessary" to comply

10

with the purposes of sentencing.  That Office recommended a sentence of "time served, to be followed by a one-year term of supervised release," 200 hours of community service, and a $25,000 fine.  PSR at 19.  Dr. Younger has not served any time, and thus "time served" does not appear to be a correct sentence.  In addition, a term of supervised release can only follow a term of incarceration. 18 U.S.C. §3583(a).  For these reasons, Dr. Younger respectfully submits that a sentence of one year of probation, and community service and/or a fine as specified by the Court, would a legal and just sentence.

The factors that support such a sentence are as follows:

*First*, and as the Probation Office has stated, it is "most significantly" the history and characteristics of Dr. Younger that support the adequacy of a sentence of probation, together with community service and/or a fine, to meet the objectives of sentencing.  PSR at 18.  The only time in his life when Dr. Younger has failed to abide the law is when he committed the tax offense that he has admitted.  Dr. Younger is the leader and provider in his family; he has always supported his wife, and continues to provide financial and emotional support for his sons.  Dr. Younger also has dedicated his professional career to making meaningful contributions to his patients, his students, and to medical scholarship.  He continues to be in a position to do so if his practice and research is uninterrupted, but imprisonment would likely make it difficult, given his age, to regain the means by which he currently makes his living.

*Second*, although Dr. Younger has accepted full responsibility for his actions, pled guilty, and admitted that his crime was the result of gross self-indulgence, there are circumstances that are relevant to putting his crime in context.  In late 2007 and 2008, the family household was in unusual turmoil, because of Adam's fall while horseback riding and the extremely difficult course of his recovery.  Dr. Younger and his wife were also providing care to Dr. Younger's

11

mother, who died of Alzheimer's disease in the summer of 2008, just as Adam was reaching full recovery. Dr. Younger did not prepare his taxes for the years 2007 and 2008 himself; he relied on a tax preparer whom he had hired on a friend's recommendation. Dr. Younger has taken responsibility for knowing that expenses had been miscategorized, but he was also ill-served by the accountant, who although he had the same knowledge of the expenses and their proper categorization as Dr. Younger, did not address with Dr. Younger the submission of a correct return. The accountant also abandoned Dr. Younger as soon as the IRS scheduled meetings to carry out its audit, in June 2010.

*Third*, Dr. Younger has cooperated since the outset of the IRS investigation with the IRS investigation and is committed to paying his tax debt in full. Upon learning of the audit in 2010, Dr. Younger retained new accountants and a lawyer to respond to IRS inquiries, produce documents, and meet with the IRS. Since the inception of the investigation, and throughout the time that the audit evolved into a criminal investigation, it has been Dr. Younger's objective to make the IRS whole. While the combined tax loss for the years 2007 and 2008 has been estimated by Dr. Younger and the government to be approximately $350,000, the total amount of restitution owed could approach $1 million with interest and penalties. As the Pre-Sentence Report notes, Dr. Younger has already set aside $350,000 to pay any arrearage owed, PSR ¶ 18, and he intends to make good on paying the taxes owed, with interest and penalties, as soon as he has the ability to do so.

*Fourth*, Dr. Younger has already suffered meaningful punishment. The duration of the IRS investigation and the age of the tax years are unusual in this case. Dr. Younger's tax returns from 2007 and 2008 were under IRS scrutiny for six years, from 2010 to 2016; the IRS recommended prosecution to the U.S. Department of Justice over two years ago. Obviously

having the prospect of criminal charges hanging over his head for such a long time was a constant source of stress and anxiety for Dr. Younger and his family.  As is related in the Pre-Sentence Report, Dr. Younger has sought the care of psychiatrists and psychotherapists periodically since he was a teenager, for treatment of anxiety and depression, including when his parents were ailing and as a result of being investigated and prosecuted.  PSR ¶¶ 46-49.  He continues to be treated by a Board-certified psychiatrist, Dr. Robert D. Scharf, who has submitted a letter to the Court describing Dr. Younger's course of treatment and his diagnoses.[3]

The prosecution of Dr. Younger also has brought public shaming.  Patient Gina Cioffi observed with insight in relating Dr. Younger's situation to another one known to her: "The sheer harshness of admitting guilt is an ever-present feeling that never leaves you."  Dr. Younger's reputation has also suffered in the eyes of the public and his peers.  Dr. Younger and his wife have lost friends.  As Dr. Younger describes it in his own letter to the Court, facing the questions of his family, friends, acquaintances, patients, and colleagues has re-taught him the value of humility.  He has been reminded to focus on the simpler aims he had when he first decided to pursue medicine as a career.  Dr. Younger has discussed his guilty plea with the hospitals at which he has privileges.  He continues to face a risk, however, that his conviction and sentence may cause him to lose his medical license, his hospital privileges, and the trust of his patients.

*Fifth*, Dr. Younger has demonstrated that he is genuinely remorseful and has taken significant measures to rehabilitate himself.  Dr. Younger has written to the Court that he has no excuses for his conduct, which betrayed his own values.  As has been noted by the Probation

---

[3]  Pursuant to Instruction 21.4 of the Electronic Case Filing Rules and Instructions of this Court, Dr. Scharf's letter is not being filed electronically but a copy has been provided to the government.  The defense is prepared to provide the letter to the Court at sentencing.

Office and each of the individuals who have written in support of Dr. Younger, Dr. Younger has been candid and regretful about his crime. Dr. Scharf, Dr. Younger's psychiatrist, has described that in the time that Dr. Younger has been under his care, including for depression and anxiety accompanied by "difficulty in self-reflection" and for "self-impeding self-destructive features," Dr. Younger has become more able to address his past actions and also more motivated in doing so. Dr. Scharf's assessment is that Dr. Younger is "significantly improved" in all of the personality features with which he has struggled.

As related above, and as a response to being investigated and prosecuted, Dr. Younger has also returned to graduate school to obtain degrees and training in public health and epidemiology. By doing so, Dr. Younger has aspired to cover two goals: working more directly for the public good and planning for the possibility that his ability to continue to treat patients is impaired.

*Sixth and finally*, as the foregoing demonstrates, no objective of sentencing would be served by incarcerating Dr. Younger. He is not a threat to society and imprisoning him will prevent him from making the considerable contributions he makes to his family and to society. Further, while the objective of general deterrence can always theoretically be enhanced by a higher sentence, here the government has publicized Dr. Younger's prosecution and plea, and Dr. Younger has done his part to reinforce the government's public messaging by admitting his guilt promptly and fully. Punishment beyond the type of sentence recommended by the Probation Office would disproportionately harm Dr. Younger, his family, and his patients, without any likely incremental deterrent effect.

14

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court impose a sentence of one year of probation and community service and/or a fine.

DATED: New York, New York  
September 12, 2016

Respectfully submitted,

By: /s/ Christine H. Chung  
QUINN EMANUEL URQUHART & SULLIVAN, LLP  
Christine H. Chung  
51 Madison Avenue, 22nd Floor  
New York, New York 10010  
(212) 849-7000

*Attorneys for Defendant David Younger*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system and that it is available for viewing and downloading from the ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing to counsel for the United States of America.

DATED: New York, New York  
            September 12, 2016

Respectfully submitted,

By: */s/Christine H. Chung*  
QUINN EMANUEL URQUHART & SULLIVAN, LLP  
Christine H. Chung  
51 Madison Avenue, 22nd Floor  
New York, New York 10010  
(212) 849-7000