

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 15, 2016

**BY ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>United States</u> v. <u>David Younger</u>,
             16 Cr. 348 (JSR)

Dear Judge Rakoff:

      David Younger ("Younger," or the "defendant") is scheduled to be sentenced in this matter on September 19, 2016, at 4:00 p.m. The Government respectfully submits this memorandum in advance of the sentencing and in response to the defendant's memorandum, dated September 12, 2016 ("Def. Mem."), in which the defendant requests that the Court impose a non-incarceratory sentence. For the reasons set forth below, the Government respectfully submits that a sentence of imprisonment within the applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 18 to 24 months would sufficient but not greater than necessary.

**A. Factual Background**

      As set forth in the Presentence Investigation Report ("PSR"), at all times relevant to the instant offense, the defendant was a board-certified neurologist who maintained a private medical practice in Manhattan. (PSR ¶ 7). The defendant operated his medical practice through a professional corporation he called the David S. Younger M.D., P.C. (the "Younger P.C.").

      In the tax years 2007 and 2008, the defendant funded lavish personal expenses for himself and his family by using corporate funds, and then falsely classified those expenses as business expenses and deducted them from on tax returns for the Younger P.C. In total, in those two years the Government's investigation identified at least approximately $586,000 of personal expenses the defendant paid using his corporate credit card and business bank account. (PSR ¶¶ 9-10).

      The PSR describes some of the personal expenses that the defendant funded through his tax fraud, including:

- Approximately $100,000 in private country club fees;

- A $4,300 placement fee for the a nanny/housekeeper for the defendant's family;
- Various expenses for the furnishing, construction, and maintenance of the defendant's Westchester residence, including $53,000 for property taxes, approximately $17,000 for the construction of an electric gate, $37,000 for construction work, and $18,000 for furniture;
- $26,000 for the restoration of a piano that was picked up from and delivered to the defendant's residence; and
- Approximately $20,000 in airfare for members of the defendant's family.

(PSR ¶ 12). When the defendant classified these expenses on the books and records of the Younger P.C., he claimed that they were items such as "medical supplies," "seminars," and "office expenses." (PSR ¶¶ 9-10).

As a result of the defendant's actions, these items and other personal expenses were falsely classified as business expenses and deducted from the Younger P.C. corporate tax returns for 2007 and 2008. (PSR ¶ 11). Similarly, because these expenses were recognized as business expenses, they were not recognized as income on the defendant's personal tax returns for 2007 and 2008. (PSR ¶ 11).

**B. The Presentence Investigation Report and Guidelines Sentence Recommendation**

The Government has reviewed the PSR submitted by the United States Probation Department ("Probation") and has no objections.

Pursuant to U.S.S.G. § 2T1.1, Probation calculates the defendant's adjusted offense level to be 18. (PSR ¶¶ 20-25). Pursuant to U.S.S.G. §§ 3E1.1(a) and (b), a three-level reduction is warranted based on the defendant's acceptance of responsibility and timely notification of an intention to plead guilty. (PSR ¶¶ 27-28). Accordingly, the defendant's total offense level is 15.

Probation computes a total of zero criminal history points based on the defendant's criminal history. (PSR ¶ 32). Accordingly, the defendant is in criminal history category I. (PSR ¶ 32). As a result, the defendant's anticipated Guidelines sentencing range is 18 to 24 months of imprisonment.

**C. Discussion**

    **1. Applicable Law**

The United States Sentencing Guidelines still provide strong guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (2) the four legitimate purposes of sentencing, as set forth below, see id. § 3553(a)(2); (3) "the kinds of sentences available," id. § 3553(a)(3); (4) the Guidelines range itself, see id. § 3553(a)(4); (5) any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); (6) "the need to avoid unwarranted sentence disparities among defendants," id. § 3553(a)(6); and (7) "the need to provide restitution to any victims," id. § 3553(a)(7).  See Gall, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)     to afford adequate deterrence to criminal conduct;
> (C)     to protect the public from further crimes of the defendant; and
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## 2. A Guidelines Sentence Would Be Reasonable

The Government respectfully submits that an application of the factors set forth in 18 U.S.C. § 3553(a) to this case indicates that a sentence within the applicable Guidelines range would be appropriate in order to comply with the purposes of sentencing.  Most importantly, the need to afford adequate deterrence counsels in favor of a Guidelines sentence of imprisonment. See 18 U.S.C. § 3553(a)(2)(B).  As the United States Sentencing Commission has explained, "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would be violators." U.S.S.G. Ch. 2, Part T, intro. comment.  The late Judge Edward Weinfeld articulated the same point prior to the advent of the Sentencing Guidelines:

> This court has long had the view that income tax evasion cases where defendants are found guilty, whether upon their pleas of guilty or after jury verdict, require a term of imprisonment. The income tax laws of our country in effect reflect an honor system under which the citizens are required to cooperate with the government, to file true and accurate returns. I have been of the view that unless a citizen lives up to his responsibility there must follow, barring an extraordinary situation, a term of imprisonment as an example to other people in the community.

United States v. Tana, 85 Cr. 1119 (EJW) (June 17, 1986; Tr. at 12-13).

This country depends largely upon voluntary compliance with the internal revenue laws by all citizens, regardless of wealth or status. And that system of voluntary compliance would be

undermined if wealthy and successful individuals such as the defendant come to believe that the most severe sanctions that they will face, in the relatively unlikely case that they are caught cheating on their taxes, are the payment of back taxes, interest, and penalties, as well as the "public shaming" that the defendant asserts he has endured. See Def. Mem. at 13.

The Guidelines therefore recognize the enormous harm tax crimes inflict on society and recommend prison sentences for cases like this one. The "tax gap" – the gap between what is owed and what is paid – was $90 billion in 1987, and has since grown fivefold: to $450 billion, as of the IRS's most recent comprehensive study.[1] This tax gap of almost half a trillion dollars, which has likely increased since the IRS issued its study, is a staggering sum. Moreover, it is difficult for the IRS to detect fraudulently filed tax returns, and it is even more difficult for criminal authorities to have an impact on the filing of such returns—each year, there are approximately 150 million individual income tax returns filed, there are approximately 1.2 million civil IRS audits, and there are only approximately 1,500 criminal tax prosecutions.[2] Given these figures, the need for effective deterrence is clear.

A sentence of imprisonment sends the appropriate message to all that this sort of conduct, regardless of the net worth of the defendant, is serious and will result in incarceration. While the PSR suggests that a variance may be warranted as a result of "[m]itigating circumstances regarding the defendant's social circumstances" (PSR ¶ 77), a sentence of probation—as requested by the defendant—would undermine deterrent efforts and would send the message that the wealthy do not go to jail for economic crimes.

A Guidelines sentence would also reflect the seriousness of the offense. See 18 U.S.C. § 3553(a)(2)(A). The defendant engaged in a course of conduct over multiple years, involving repeatedly lying about the nature of his expenses in an attempt to avoid paying taxes on his actual income. In his sentencing submission, however, the defendant attempts to "put[] his crime in context" by claiming that he was "ill-served" by his accountant, and that the accountant "had the same knowledge of the expenses and their proper categorization as Dr. Younger" but did not address the issue with the defendant. See Def. Mem. at 11-12. This assertion minimizes the extent to which the defendant himself incurred the lavish expenses at the heart of this case, and then lied about them to his accountant and, ultimately, to the IRS. Indeed, no special training in accounting is necessary in order to understand that items such as a baseball card, a piano, and plane tickets to vacation destinations are not "medical supplies" and cannot be deducted as

---

[1] This IRS study was issued in 2012 and based on data extending through 2006. See IRS Releases New Tax Gap Estimates, Rel. No. IR-2012-4 (Jan. 6, 2012), https://www.irs.gov/uac/IRS-Releases-New-Tax-Gap-Estimates%3B-Compliance-Rates-Remain-Statistically-Unchanged-From-Previous-Study.

[2] See IRS, Mid-November filing season statistics by AGI, https://www.irs.gov/uac/Filing-Season-Statistics; Internal Revenue Service Data Book, 2014, at iii, https://www.irs.gov/pub/irs-soi/14databk.pdf; Tax Division, United States Department of Justice, FY 2016 OMB Budget, http://www.justice.gov/sites/default/files/jmd/pages/attachments/2015/02/01/9._tax_division_tax.pdf.

business expenses.  In short, the defendant's conduct was obviously wrongful and cannot be excused by shifting blame to his accountant.

**D.  Conclusion**

       For the reasons set forth above, the Government respectfully submits that a sentence within the applicable Guidelines range of would be appropriate in this case.

                                        Respectfully,

                                        PREET BHARARA
                                        United States Attorney

                       By:      /s/ Richard Cooper
                                        Richard A. Cooper
                                        Assistant United States Attorney
                                        Tel. No.: (212) 637-1027

cc:      Christine Chung, Esq. (by ECF)